# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

KAPRIA MORRELL,

        Hon.
        Case No.

      Plaintiff,

v.

THE CHILDREN'S CENTER OF
WAYNE COUNTY, INC., and
BOARD OF DIRECTORS OF THE
THE CHILDREN'S CENTER OF
WAYNE COUNTY, INC.,

      Defendants.

---

FELICIA D. BROCK (P63352)
TRACY G. SMITH (P74572)
IAB ATTORNEYS AT LAW PLLC
Attorneys for Plaintiff
8829 Asbury Park
Detroit, MI 48228-2005
(313) 318-3180/Fax: (313) 766-4732
duncan@iabattorneys.com

GREGORY M. MEIHN (P38939)
MELINDA A. BALIAN (P55744)
FOLEY & MANSFIELD, PLLP
Attorneys for Defendants
130 E. 9 Mile Rd.
Ferndale, MI 48220-3728
(248) 721-4200/Fax: (248) 721-4201
gmeihn@foleymansfield.com
mbalian@foleymansfield.com

---

## DEFENDANTS' NOTICE OF REMOVAL PURSUANT TO 28 USC 1441 (a) AND 1446

      PLEASE TAKE NOTICE that Defendants, The Children's Center of Wayne County, Inc. and The Board of Directors of The Children's Center of Wayne County, Inc. (hereinafter "Defendants"), by and through their counsel, Foley & Mansfield, PLLP, hereby remove the matter entitled Kapria Morrell v. The Children's Center

*(sidebar, left margin)* Foley & Mansfield, PLLP · 130 East Nine Mile Road · Ferndale, MI 48220

**Foley & Mansfield, PLLP**
130 East Nine Mile Road
Ferndale, MI 48220

of Wayne County, et al., Case No. 21-000095-CD, currently pending in the Wayne County Circuit Court for the State of Michigan, to the United States District Court for the Eastern District of Michigan, Southern Division. The bases for removal are set forth below.

## STATEMENT OF GROUNDS FOR REMOVAL

1. On or about January 4, 2021, an action was commenced in the Wayne County Circuit Court for the State of Michigan, bearing Case No. Case No. 21-000095-CD. Defendants were served on March 16, 2021. A copy of the Summons and Complaint, which constitute all process and pleadings by Plaintiff, Kapria Morrell ("Plaintiff"), of which Defendants have notice, is attached **Exhibit A.**

2. This Notice of Removal is being filed within 30 days after Defendants were served with the Summons and Amended Complaint and Jury Demand[1] or otherwise as required by 28 USC 1446(b).

3. This Court has jurisdiction over this case based on federal question jurisdiction pursuant to 28 USC 1331 and supplemental jurisdiction pursuant to 28 USC 1367.

---

[1] Defendants were not served and have no knowledge of an initial Complaint.

1952121 v1

## PLAINTIFF'S FEDERAL CLAIMS

4.      Plaintiff alleges she suffered damages as a result of alleged violations by Defendants of the following federal statutes: 1) Violation of the Equal Pay Act of 1963; 2) Violation of Title VII of the Civil Rights Act of 1964-Sex Discrimination; 3) Violation of Title VII of the Civil Rights Act of 1964-Race; 4) Violation of Title VII of the Civil Rights Act of 1964-Retaliation.

5.      Specifically, Plaintiff alleges that during her employment she was paid less and treated differently than male directors and white, female directors.  Plaintiff further alleges that when she complained regarding this issue she suffered retaliation resulting in her termination. In addition to the federal claims, Plaintiff alleges damages as a result of alleged violations by Defendants of the following state statute 1) Violation of the Elliott-Larsen Civil Rights Act-Gender Discrimination; 2) Violation of the Elliott-Larsen Civil Rights Act-Race Discrimination; and 3) Violation of the Elliott-Larsen Civil Rights Act-Retaliation.

## THE OTHER REMOVAL PREREQUISITES HAVE BEEN SATISFIED

6.      All Defendants have consented to this removal.

7.      No Defendant has sought similar relief with respect to this matter.

8.      The prerequisites for removal under 28 USC 1441 have been met.

9.      Written notice of the filing of this Notice of Removal will be given to the adverse parties as required by law.

**Foley & Mansfield, PLLP**
130 East Nine Mile Road
Ferndale, MI  48220

10.     Defendants will promptly file with the Clerk for the 3rd Judicial Circuit Court in and for Wayne County, Michigan, a Notice of Filing of Notice of Removal pursuant to 28 USC 1446(b).  A copy of this Notice is attached as **Exhibit B**.

11.     The allegations of this notice are true and correct and this cause is within the jurisdiction of the United States District Court for the Eastern District of Michigan, Southern Division.

Defendants file this Notice of Removal and remove this civil action to the United States District Court for the Eastern District of Michigan, Southern Division. Plaintiff is notified to proceed no further in state court unless or until the case should be remanded by order of said United States District Court.

Respectfully submitted,
FOLEY & MANSFIELD, PLLP

/s/  *Melinda A. Balian*
MELINDA A. BALIAN (P55744)
Attorney for Defendants

Dated: April 8, 2021

| Proof of Service |
| --- |
| I, Lynette Douglas, certify that **Defendants' Notice Removal** was served on all parties in this case to each of the attorneys of record at their respective addresses as disclosed on the pleadings in this case on **April 8, 2021** by: |

[X] **U.S. Mail**          [ ] Fax
[ ] Hand Delivery          [ ] UPS Overnight
[ ] Federal Express          [X] **Email**
[ ] Other- **MiFile**

Signature: _____ */s/ Lynette Douglas* _____
Lynette Douglas

**Foley & Mansfield, PLLP**
130 East Nine Mile Road
Ferndale, MI  48220

4

# EXHIBIT A

# EXHIBIT A

Approved, SCAO

| | Original - Court<br>1st Copy- Defendant | 2nd Copy - Plaintiff<br>3rd Copy -Return |
|---|---|---|

| **STATE OF MICHIGAN**<br>**THIRD JUDICIAL CIRCUIT**<br>**WAYNE COUNTY** | **SUMMONS** | **CASE NO.**<br>**21-000095-CD**<br>**Hon.Charles S. Hegarty** |
|---|---|---|

Court address : 2 Woodward Ave., Detroit MI 48226          Court telephone no.: 313-224-5487

| **Plaintiff's name(s), address(es), and telephone no(s)**<br>Morrell, Kapria | v | **Defendant's name(s), address(es), and telephone no(s).**<br>The Children's Center of Wayne County, Inc |
|---|---|---|
| **Plaintiff's attorney, bar no., address, and telephone no**<br><br>Felicia Duncan Brock 63352<br>25447 Plymouth Rd<br>Redford, MI 48239-2022 | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court,

where it was given case number _____ and assigned to Judge _____.

The action ☐ remains   ☐ is no longer pending.

Summons section completed by court clerk.          | **SUMMONS** |

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>1/4/2021 | Expiration date*<br>4/5/2021 | Court clerk<br>Laverne Chapman |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01** (9/19)          **SUMMONS**          MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

KAPRIA MORRELL

       Plaintiff,                             Honorable: Charles S. Hegarty

vs                                         Case No.: 21-000095-CD

THE CHILDREN'S CENTER OF
  WAYNE COUNTY, INC and
BOARD OF DIRECTORS OF THE
CHILDREN'S CENTER OF
WAYNE COUNTY, INC

       Defendants.

_____/

Felicia Duncan Brock (P63352)
Tracy G. Smith (P74572)
I.A.B. ATTORNEYS AT LAW, PLLC
8829 Asbury Park
Detroit, Michigan 48228
(313) 318-3180
duncan@iabattorneys.com

_____/

## AMENDED COMPLAINT AND JURY DEMAND

**There is not another action which arises out of the same transaction and occurrence as stated herein, which is presently pending or was previously filed and dismissed, transferred or otherwise disposed of after having been assigned to a judge in this court.**

Plaintiff, KAPRIA MORRELL, by her attorneys I.A.B. Attorneys At Law, PLLC and per

her Amended Complaint, states as follows:

1. This is an action to enforce civil rights arising out of Plaintiff's employment relationship

    with Defendants The Children's Center of Wayne County, Inc ("Center") and Board of

Directors of the Children's Center of Wayne County, Inc ("Board"), pursuant to the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq., and the Equal Pay Act of 1963, 29 USC 206 et seq.

2. Plaintiff is a resident of the State of Michigan, county of Wayne.

3. Defendant Center is a non-profit corporation providing varied support to at-risk children within Detroit and Wayne County, Michigan.

4. Defendant Board is the governing body of Defendant Center selected and operating pursuant to the Michigan Nonprofit Corporation Act of 1982, MCL 450.2101 et seq.

5. The events giving rise to this cause of action occurred in Wayne County.

6. The amount in controversy exceeds $25,000, exclusive of interest, costs, and attorney fees.

7. At all times relevant to the claims embodied in this Complaint, all agents of Defendants were acting under Defendants' authority.

8. Plaintiff is an African American female.

9. In March 2016, Plaintiff was hired as the Director of Corporate Philanthropy.

10. As Director of Corporate Philanthropy, Plaintiff was under the supervision of the President and CEO Debora Matthews.

11. In addition to supervising the Director of Corporate Philanthropy, Matthews also supervised the entire philanthropy team, including the Director of Philanthropy Operations; the Director of Consumer & Foundation Philanthropy; the Director of Individual Philanthropy; and the Director of Volunteer and Community Engagement.

12. Matthews directly reports to the Board.

13. The Board utilizes information from Matthews to make personnel decisions.

2

14. In other words, the Board did not conduct independent investigations to determine the veracity of Matthews' reported information.

15. From the beginning of Plaintiff's employment, she was being paid less than her white, male and female co-workers for performing the same level of work with the same level of responsibility.

16. Further, Plaintiff's education and employment experience was equal to or greater than her peers.

17. Plaintiff's position and experience was substantially equal to that of her higher paid, white male and female peers.

18. On or about January 8, 2018, Plaintiff inquired with Defendants' CEO (Matthews) and COO (Winn) as to discrepancies between her salary and the salary of her peers.

19. Plaintiff's inquiries were both in person and via email.

20. After meetings with Defendants' management, in February 2018, Plaintiff's direct supervisor gave her a salary increase letter.

21. Plaintiff's direct supervisor informed her that she was receiving the salary increase to compensate her for becoming the direct supervisor of a staff person.

22. Literally within a matter of hours after receiving the salary increase letter, Plaintiff was also assigned the responsibility of supervising the grants manager while a colleague went on a sudden leave of absence.

23. Although Plaintiff's salary increased due to possibly a change in responsibilities, a new accountability matrix was never conducted; and a new job description was not created.

24. The accountability matrix would have itemized, reviewed and/or investigated Plaintiff's job responsibilities to determine the appropriate salary level.

25. In October 2018, Defendants terminated the Director of Volunteer and Community Engagement.

26. Before terminating Plaintiff's white, female co-worker for performance issues, Defendants followed their policy of placing the co-worker on a Corrective Action Plan ("CAP").

27. Placing an employee on a CAP before termination is Defendants' standard policy unless the employee's actions were egregious, like harming a child—which results in immediate termination.

28. Most notably, Plaintiff's Co-worker was placed on a CAP, which was ultimately extended, before termination.

29. In addition to being placed on an extended CAP, before the co-worker's termination, many of Defendants' employees signed and submitted a complaint letter to Defendants' management about the co-worker.

30. After the co-worker's termination, her job responsibilities were split between Plaintiff and the African American male grants manager that Plaintiff was supervising.

31. At that time, the grants manager was promoted to the Director of Consumer & Foundation Philanthropy position.  As a result, he was given a salary increase.

32. Notably, Plaintiff's salary was not increased as a result of her being assigned these additional, Director of Volunteer and Community Engagement job duties.

33. It is Defendants' policy to review an employee's salary, and when warranted to increase the employee's salary based upon an increase in their job duties.

34. Again, no such review was conducted when Plaintiff's job responsibilities increased.

35. In July 2019, the African American, male director began inquiring into the salaries of his female co-workers.

36. During this time frame, George Winn, Chief Operations Officer and Matthews informed Plaintiff that her 2018 salary increase was due to a market adjustment.

37. Further, at the same time in 2018, others within the philanthropy team also received a salary increase.

38. Note that Defendants' other male directors also work under Matthews' supervision.

39. In support of the male Director of Consumer & Foundation Philanthropy's gender wage discrepancy complaint, Plaintiff also began sending emails inquiring about their salaries.

40. As a result, in July 2019, the philanthropy directors met with the Executive Leadership Team ("ELT") about compensation.

41. In the meeting, the Executive Leadership Team sat on one side of the table in a very intimidating manner.

42. During the meeting, Plaintiff provided a PowerPoint presentation which specifically provided information about gender and race pay equity.

43. For example, Plaintiff's PowerPoint provided definitions of unequal pay, as well as statistics regarding salary differences between African American females, African American men, white males and white females.

44. In addition, in the meeting, Plaintiff stated that she believed the difference in their salaries was due to race and gender.

45. The ELT were angry at Plaintiff's and the African American male director's use of the term discrimination; and rebuked them for using the term.

46. Thereafter, the ELT met with each philanthropy director individually regarding their compensation.

47. In July 2019, after her individual meeting with the ELT, Plaintiff sent an email asking additional, specific questions about her salary and what was discussed in the meeting.

48. Matthews responded to Plaintiff's email stating that Plaintiff's concerns would be addressed by the end of August 2019.

49. After Matthews' self-imposed deadline to address Plaintiff's concerns passed, on September 7, 2019, Plaintiff sent Matthews a follow-up email.

50. Matthews responded with a request for patience.

51. Complying with Matthews' request, Plaintiff waited more than two months without sending further inquiries regarding her compensation.

52. On November 14, 2019, Matthews contacted Plaintiff via email and requested to meet with Plaintiff about Plaintiff's compensation concerns.

53. In December 2019, Plaintiff and Matthews met as Matthews requested.

54. At the meeting, Matthews asked Plaintiff to state her concerns once again.

55. Notably, Plaintiff asked why she was being treated differently than the male directors and the white, female directors.

56. Important, Matthews asked Plaintiff whether the salary discrepancy was something that she was still pursuing.

57. Plaintiff said "yes."

58. As the meeting concluded, Matthews indicated that she would need to review the compensation records back through 2017; and that she would follow-up in January 2020.

59. In or about January 2019, Plaintiff met with her direct supervisor who referred to Plaintiff as being "angry."

60. Plaintiff immediately addressed her supervisor's use of the term "angry."

61. In fact, Plaintiff informed her direct supervisor that calling a black woman angry when speaking out is discriminatory.

62. Then again in another January 2019 meeting, Plaintiff's direct supervisor called Plaintiff "combative."

63. In response, Plaintiff asked for an explanation as to why she was being viewed as "combative."

64. Not having heard anything from Matthews, on January 14, 2020, Plaintiff sent an email to her direct supervisor regarding her compensation concerns.

65. During this same time frame, Plaintiff asked in an email whether something bigger was going on because she had yet to receive her performance goals.

66. Specifically, between October and January 2020, Plaintiff was experiencing Defendants' delay in providing her with performance goals; failure to approve her Paid-Time-Off requests; and failure to provide her with an opportunity to review her personnel records, among other things.

67. On January 30, 2020, two weeks after her last compensation inquiry, Plaintiff received a text from Chief Philanthropy Officer Tammy Zonker as to whether Plaintiff was available for a call at 5:00 p.m.

68. As requested, Plaintiff called Zonker; and Zonker did not answer.

69. Within minutes, Zonker returned Plaintiff's call; and in addition to Zonker, on the telephone was Yvonne Herman, Defendants' Director of Human Resources, and Winn.

70. During this conversation Plaintiff was terminated effective January 31, 2020.

71. In addition, Plaintiff was told for the first time that she was allegedly being terminated for chronic lateness; her refusal to supervise her subordinate; failing to place meetings on her

schedule; her failure to adequately perform pledge collections; and her refusal to participate in committee meetings.

72. In fact, Plaintiff reported timely to work daily.

73. In fact, Plaintiff supervised her subordinate.

74. In fact, Plaintiff placed meetings on her schedule as required.

75. In fact, Plaintiff adequately raised funds and participated in pledge collections.

76. In fact, Plaintiff attended committee meetings.

77. None of the alleged reasons Defendants proffered for terminating Plaintiff can be substantiated.

78. Moreover, prior to her termination, Plaintiff only received stellar performance evaluations.

79. In addition, Plaintiff was never placed on a CAP; nor was she sent any emails regarding alleged performance deficiencies, given any performance deficiency memos; called into a meeting, or was in any other manner informed that her performance was anything other than exceptional.

80. On May 9, 2020, Plaintiff submitted a complaint to the Equal Employment Opportunity Commission.

81. Due to COVID-19 restrictions, the EEOC was unable to meet with Plaintiff until October 21, 2020 at 11:30 a.m.

82. At that time, the EEOC established a deadline of December 15, 2020 for Plaintiff to file a Charge.

83. On November 11, 2020, Plaintiff's timely EEOC Charge of race, sex, equal pay discrimination; and retaliation was filed.

84. On February 6, 2021, Plaintiff received her Right-To-Sue letter from the EEOC.

**Count I**
**Gender Discrimination**
**Under the Michigan Elliott-**
**Larsen Civil Rights Act as to Defendants**

85. Plaintiff incorporates by reference paragraphs 1 through 84.

86. At all material times, Plaintiff was an employee, and Defendants were her employers, covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.

87. During Plaintiff's employment, Defendants were aware that she is an African American female.

88. Plaintiff's gender and/or her race and gender was a factor that made a difference in Defendants' decision to subject her to the wrongful and discriminatory treatment described above.

89. Defendants, by their members, agents, representatives, and employees, was predisposed to discriminate on the basis of gender and/or her race and gender; and acted in accordance with that predisposition.

90. Defendants' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

91. According to Plaintiff's performance evaluations; all email communications; and every meeting with Defendants' representatives prior to termination, Plaintiff was qualified for the Director of Corporate Philanthropy position, among others.

92. Defendants' allegations of poor performance are untrue.

93. The reason Plaintiff was treated as described herein was because of her gender and/or her race and gender.

94. If Plaintiff was a male and/or a white female, she would have been paid a salary comparable to her knowledge, skills and abilities; she would have been paid a salary equal to or surpassing Defendants' male directors; she would have received salary increases proportionate to increases in her job duties; she would have been placed on a CAP to address any alleged performance deficiencies prior to termination; and she never would have been terminated, among other things.

95. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, career opportunities, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation, among other things.

### Count II
### Race Discrimination
### Under the Michigan Elliott-
### Larsen Civil Rights Act as to Defendants

96. Plaintiff incorporates by reference paragraphs 1 through 95.

97. At all material times, Plaintiff was an employee, and Defendants were her employers, covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.

98. During Plaintiff's employment, Defendants were aware that she is an African American female.

99. Plaintiff's race and/or her race and gender was a factor that made a difference in Defendants' decision to subject her to the wrongful and discriminatory treatment described above.

100.     Defendants, by their members, agents, representatives, and employees, was predisposed to discriminate on the basis of gender and/or her race and gender; and acted in accordance with that predisposition.

101.     Defendants' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

102.     According to Plaintiff's performance evaluations; all email communications; and every meeting with Defendants' representatives prior to termination, Plaintiff was qualified for the Director of Corporate Philanthropy position, among others.

103.     Defendants' allegations of poor performance are untrue.

104.     The reason Plaintiff was treated as described herein was because of her race and/or her race and gender.

105.     If Plaintiff was white and/or a white male, she would have been paid a salary comparable to her knowledge, skills and abilities; she would have been paid a salary equal to or surpassing Defendants' white directors and/or African American, male directors; she would have received salary increases proportionate to increases in her job duties; she would have been placed on a CAP to address any alleged performance deficiencies prior to termination; and she never would have been terminated, among other things.

106.     As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, career opportunities, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation, among other things.

**Count III**
**Retaliation**
**Under the Michigan Elliott-**
**Larsen Civil Rights Act as to Defendants**

107.     Plaintiff incorporates by reference paragraphs 1 through 106.

108.     During her employment, Plaintiff complained to Defendants' COO, CEO and other

Defendants' management employees in both writing and in-person that, as to her salary,

she was the victim of race, gender, and/or race gender discrimination.

109.     Plaintiff also participated in race discrimination complaints of a co-worker.

110.     As such, Defendants were fully aware of Plaintiff's complaints.

111.     These complaints constitute activity protected under the Michigan Elliott-Larsen

Civil Rights Act, MCL 37.2101 et seq.

112.     In short proximity to Plaintiff making such complaints, Defendants refused to

approve her paid-time-off requests, and ultimately terminated her employment, among

other things.

113.     Specifically,   according   to   Plaintiff's   performance   evaluations;   all   email

communications; and every meeting with Defendants' representatives prior to termination,

Plaintiff was qualified for the Director of Corporate Philanthropy position, among others.

114.     In addition to never informing Plaintiff of any alleged performance deficiencies,

Defendants, failed to place Plaintiff on the customary CAP.

115.     This failure was in violation of Defendants' policies.

116.     In fact, Defendants' allegations of poor performance are untrue.

117.     The reason Plaintiff was treated as described herein was in retaliation for Plaintiff's

discrimination complaints; and assisting her co-worker in pursuit of his discrimination

claim.

118.    Defendants' and their agents' action against Plaintiff constitute retaliation in violation of the Michigan Elliott-Larsen civil Rights Act.

119.    As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, career opportunities, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation, among other things.

**Count IV**
**Discrimination**
**Under the Equal Pay Act of 1963 as to Defendants**

120.    Plaintiff incorporates by reference paragraphs 1 through 115.

121.    At all material times, Plaintiff was an employee, and Defendants were her employers, covered by and within the meaning of the Equal Pay Act of 1963, 29 USC 206 et seq.

122.    During her employment, Defendants were aware that Plaintiff is a female.

123.    As Defendants' employee, Plaintiff was paid a salary that was less than Defendants' male directors.

124.    Plaintiff's director position was substantially equal to Defendants' higher paid male directors.

125.    Further, both Plaintiff's and Defendants' male directors' positions require the same skill, effort, and responsibilities.

126.    In addition, Plaintiff and the male directors work in the same establishment under the same or similar working conditions.

127.    Moreover, Plaintiff's knowledge, skills and abilities were the same or similar to Defendants' male directors.

128.    Also, the difference in pay between Plaintiff and Defendants' male directors is not because of seniority system, a merit system, a production or commission, or any other reason(s) other than sex.

129.    As such, the reason Plaintiffs' salary was lower than Defendants' male directors was because of her sex.

130.    As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, career opportunities, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation, among other things.

### Count V
### Sex Discrimination
### in Violation of Title VII of the
### Civil Rights Act of 1964 as to Defendants

131.    Plaintiff incorporates by reference paragraphs 1 through 130.

132.    At all material times, Plaintiff was an employee, and Defendants were her employers, covered by and within the meaning of Title VII.

133.    Defendants' actions constitute a violation of Title VII.

134.    During Plaintiff's employment, Defendants were aware that she is an African American female.

135.    Plaintiff's sex and/or her race and sex was a factor that made a difference in Defendants' decision to subject her to the wrongful and discriminatory treatment described above.

136.    Defendants, by their members, agents, representatives, and employees, was predisposed to discriminate on the basis of sex and/or her race and sex; and acted in accordance with that predisposition.

137.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

138.    According to Plaintiff's performance evaluations; all email communications; and every meeting with Defendants' representatives prior to termination, Plaintiff was qualified for the Director of Corporate Philanthropy position, among others.

139.    Defendants' allegations of poor performance are untrue.

140.    The reason Plaintiff was treated as described herein was because of her sex and/or her race and sex.

141.    If Plaintiff was a male and/or a white female, she would have been paid a salary comparable to her knowledge, skills and abilities; she would have been paid a salary equal to or surpassing Defendants' male directors; she would have received salary increases proportionate to increases in her job duties; she would have been placed on a CAP to address any alleged performance deficiencies prior to termination; and she never would have been terminated, among other things.

142.    In addition, as Defendants' employee, Plaintiff was paid a salary that was less than Defendants' male directors.

143.    Plaintiff's and Defendants' male directors' positions require the same skill, effort, and responsibilities.

144.    Also, the difference in pay between Plaintiff and Defendants' male directors is not because of seniority system, a merit system, a production or commission, or any other reason(s) other than sex.

145.    As such, the reason Plaintiffs' salary was lower than Defendants' male directors was because of her sex.

146.    As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, career opportunities, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation, among other things.

**Count VI**
**Race Discrimination**
**in Violation of Title VII of the**
**Civil Rights Act of 1964 as to Defendants**

147.    Plaintiff incorporates by reference paragraphs 1 through 146.

148.    At all material times, Plaintiff was an employee, and Defendants were her employers, covered by and within the meaning of Title VII.

149.    During Plaintiff's employment, Defendants were aware that she is an African American female.

150.    Defendants' actions constitute a violation of Title VII.

151.    Plaintiff's race and/or her race and sex was a factor that made a difference in Defendants' decision to subject her to the wrongful and discriminatory treatment described above.

16

152.    Defendants, by their members, agents, representatives, and employees, was predisposed to discriminate on the basis of race and/or her race and sex; and acted in accordance with that predisposition.

153.    Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

154.    According to Plaintiff's performance evaluations; all email communications; and every meeting with Defendants' representatives prior to termination, Plaintiff was qualified for the Director of Corporate Philanthropy position, among others.

155.    Defendants' allegations of poor performance are untrue.

156.    The reason Plaintiff was treated as described herein was because of her race and/or her race and sex.

157.    If Plaintiff was white and/or a white man, she would have been paid a salary comparable to her knowledge, skills and abilities; she would have been paid a salary equal to or surpassing Defendants' male directors; she would have received salary increases proportionate to increases in her job duties; she would have been placed on a CAP to address any alleged performance deficiencies prior to termination; and she never would have been terminated, among other things.

158.    As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, career opportunities, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation, among other things.

**Count VII**
**Retaliation in**
**Violation of Title VII of the Civil**
**Rights Act of 1964 as to Defendants**

159.     Plaintiff incorporates by reference paragraphs 1 through 158.

160.     During her employment, Plaintiff complained to Defendants' COO, CEO and other

Defendants' management employees in both writing and in-person that, as to her salary,

she was the victim of race, sex, and/or race sex discrimination.

161.     Plaintiff also participated in race discrimination complaints of a co-worker.

162.     As such, Defendants were fully aware of Plaintiff's complaints.

163.     These complaints constitute activity protected under Title VII.

164.     In short proximity to Plaintiff making such complaints, Defendants refused to

approve her paid-time-off requests, and ultimately terminated her employment, among

other things.

165.     Specifically, according to Plaintiff's performance evaluations; all email

communications; and every meeting with Defendants' representatives prior to termination,

Plaintiff was qualified for the Director of Corporate Philanthropy position, among others.

166.     In addition to never informing Plaintiff of any alleged performance deficiencies,

Defendants, failed to place Plaintiff on the customary CAP.

167.     This failure was in violation of Defendants' policies.

168.     In fact, Defendants' allegations of poor performance are untrue.

169.     The reason Plaintiff was treated as described herein was in retaliation for Plaintiff's

discrimination complaints; and assisting her co-worker in pursuit of his discrimination

claim.

170.     Defendants' and their agents' action against Plaintiff constitute retaliation in violation of the Michigan Elliott-Larsen civil Rights Act.

171.     As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, career opportunities, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation, among other things.

PLAINTIFF REQUESTS that this court enter judgment against Defendants as follows:

1.  Legal relief
    a.  compensatory damages in whatever amount over $25,000 Plaintiff is found to be entitled
    b.  an award of back pay and the value of lost fringe benefits and pension benefits, past and future
    c.  exemplary damages in whatever amount over $25,000 Plaintiff is found to be entitled
    d.  an award of interest, costs, and reasonable attorney fees

2.  Equitable relief
    a.  an order placing Plaintiff in the position she would have held had there been no violation of her rights
    b.  an order enjoining Defendants from further acts of discrimination or retaliation
    c.  an award of interest, costs, and reasonable attorney fees
    d.  whatever other relief appears appropriate at the time of final judgment
    h.  whatever other relief may appear appropriate when this court's final order is entered

Respectfully submitted,

I.A.B. Attorneys At Law, PLLC

By:   /s/ Felicia Duncan Brock
*Attorneys for Plaintiffs*
8829 Asbury Park
Detroit, Michigan 48228
(313) 318-3180

Dated: March 11, 2021

**JURY DEMAND**

Plaintiff demands a jury trial.

Respectfully submitted,

I.A.B. Attorneys At Law, PLLC

By:   /s/ Felicia Duncan Brock
Felicia Duncan Brock (P63352)
8829 Asbury Park
Detroit, Michigan  48228
(313) 318-3180

Dated:  March 11, 2021

# EXHIBIT B

# EXHIBIT B

**STATE OF MICHIGAN**

**IN THE WAYNE COUNTY CIRCUIT COURT**

KAPRIA MORRELL,                                    Hon. Charles S. Hegarty
                                                   Case № 21-000095-CD

     Plaintiff,

v.

THE CHILDREN'S CENTER OF
WAYNE COUNTY, INC., and
BOARD OF DIRECTORS OF THE
THE CHILDREN'S CENTER OF
WAYNE COUNTY, INC.,

     Defendants.

---

| | |
|---|---|
| FELICIA D. BROCK (P63352) | GREGORY M. MEIHN (P38939) |
| TRACY G. SMITH (P74572) | MELINDA A. BALIAN (P55744) |
| IAB ATTORNEYS AT LAW PLLC | FOLEY & MANSFIELD, P.L.L.P. |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 8829 Asbury Park | 130 E. 9 Mile Rd. |
| Detroit, MI 48228-2005 | Ferndale, MI 48220-3728 |
| (313) 318-3180/Fax: (313) 766-4732 | (248) 721-4200/Fax: (248) 721-4201 |
| duncan@iabattorneys.com | gmeihn@foleymansfield.com |
| | mbalian@foleymansfield.com |

---

**<u>NOTICE OF FILING OF NOTICE OF REMOVAL</u>**

TO:   Clerk of the Court; and
      Felicia Brock, Esq.
      Tracy Smith, Esq.

     **PLEASE TAKE NOTICE** that pursuant to 28 USC 1441(a) and 1446, on

April 8, 2021 Defendants, The Children's Center of Wayne County, Inc. and The

Board of Directors of The Children's Center of Wayne County, Inc., filed a Notice

Foley & Mansfield, PLLP
130 East Nine Mile Road
Ferndale, MI 48220

of Removal with the Clerk of the United States District Court for the Eastern District of Michigan. A file-stamped copy of the Notice of Removal is attached hereto as **Exhibit A**.

FOLEY & MANSFIELD, PLLP

/s/ *Melinda A. Balian*

Attorney for Defendants
130 E. Nine Mile Rd.
Ferndale, MI  48220
(248) 721-4220
mbalian@foleymansfield.com
P55744

Dated:  April 8, 2021

**Proof of Service**

I, Lynette Douglas, certify that *Defendants' Notice of Filing Notice of Removal* was served on all parties in this case to each of the attorneys of record at their respective addresses as disclosed on the pleadings in this case on <u>**April 8, 2021**</u> by:

[ ] U.S. Mail                                  [ ] Fax
[ ] Hand Delivery                         [ ] UPS Overnight
[ ] Federal Express                       **[X] Email**
**[X]** Other- **MiFile**

Signature:  /s/ *Lynette Douglas*

Lynette Douglas

Foley & Mansfield, PLLP
130 East Nine Mile Road
Ferndale, MI  48220

2